**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

2005 SEP 29  PM 3: 20

---

DAVID KURZMAN, individually and on
behalf of all others similarly situated,

    Plaintiff,

v.

INTEL CORPORATION, a Delaware
corporation,

    Defendant.

Case No.: **05 - 710**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

---

### INTRODUCTION

Plaintiff David Kurzman, by and through his undersigned counsel, brings this civil action for declaratory and injunctive relief under federal law and for damages under state law on behalf of himself and all others similarly situated. Plaintiff bases the factual averments contained herein upon actual knowledge as to his acts and status and upon information and belief as to other matters. Specifically, as to other matters, Plaintiff bases many of his factual averments concerning Intel Corporation's unlawful conduct on a civil complaint filed by Advanced Micro Devices, Inc. ("AMD") in this Court in an action styled <u>Advanced Micro Devices, Inc. v. Intel Corp.</u> Plaintiff also believes that much of the information relevant to his claims is within the exclusive possession, custody or control of Intel Corporation and others and that Plaintiff will be able to further support the factual averments contained herein through formal discovery.

## PARTIES AND CLASS DEFINITION

1.      Plaintiff David Kurzman ("Plaintiff") is a resident of Sharon, Massachusetts.

Plaintiff brings this class action pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of

Civil Procedure on behalf of himself and members of the following proposed class:

> **All natural persons within Massachusetts who purchased (for non-business purposes) any product containing a microprocessor that runs the Microsoft Windows and Linux families of computer operating systems ("x86 Microprocessors") manufactured or sold by Intel Corporation (the "Class") at any time from the relevant limitations period to present (the "Class Period"). Excluded from that definition are: Intel Corporation and its agents, subsidiaries, affiliates, officers, directors, and employees; government entities; and judges presiding over this case along with their immediate family and staff.**

2.      Defendant Intel Corporation ("Intel") is incorporated under the laws of State of

Delaware with a principal place of business in California. Intel conducts business throughout the

United States either directly and indirectly through subsidiaries or affiliates.

## JURISDICTION AND VENUE

3.      Subject matter jurisdiction is based on 28 U.S.C. §§ 1331, 1332(d), 1337, and

1367 (supplemental jurisdiction over pendant state law claims).

4.      Venue lies in this district under 28 U.S.C. § 1391(b) and (c).

## CLASS ACTION ALLEGATIONS

5.      The members of the Class are so numerous that joinder is impracticable and

would involve thousands of individual actions. During the Class Period, there were thousands, if

not hundreds of thousands, of products containing Intel x86 Microprocessors sold in

Massachusetts. Accordingly, there are thousands if not hundreds of thousands of potential Class

members in Massachusetts alone.

6.    There are numerous questions of law or fact common to the Class including, but not limited to:

(a).    whether Intel sold x86 Microprocessors in the United States during the Class Period;

(b).    whether Intel sold x86 Microprocessors directly to original equipment manufacturers (OEMs) that serviced the Massachusetts market;

(c).    whether Intel's unlawful conduct deprived or artificially limited Plaintiff and the members of the Class of the benefits of free and fair market competition among Intel, AMD and others in Massachusetts;

(d).    whether Intel's unlawful conduct deprived or artificially limited Plaintiff and members of the Class from purchasing products containing x86 Microprocessors at lower prices in Massachusetts;

(e).    whether Intel's unlawful conduct prevented or stifled competition to drive market prices for products containing x86 Microprocessors in Massachusetts;

(f).    whether Intel's unlawful conduct prevented or limited consumer choice (Plaintiff's and Class members') to purchase products containing innovative x86 Microprocessors in Massachusetts;

(g).    whether Intel's unlawful conduct violated Massachusetts General Laws Chapter 93A ("Chapter 93A");

(h).    whether Intel made a reasonable settlement offer to Plaintiff's Chapter 93A demand letter;

(i).    whether Intel's conduct entitles Plaintiff and members of the Class to multiple damages under Chapter 93A; and

(j).    whether Plaintiff and members of the Class are entitled to injunctive relief.

7.    Those common questions of law or fact predominate over any questions of law or fact relating to individual Class members. In particular, resolution of the common questions of law and fact listed above in sub-paragraphs (a) and (f) would at least provide a definite signal of the beginning of the end with respect to finding Intel liable for maintaining an unlawful monopoly and violating Massachusetts law, in particular.

{00005884.DOC ; 2}

8.     Plaintiff's claims are typical of the claims of the Class in that he is a member of the Class, i.e., he purchased a computer containing an x86 Microprocessor manufactured or sold by Intel.  Intel acted consistently toward and injured Plaintiff and the Class members in the same manner by monopolizing the x86 Microprocessor market in Massachusetts.

9.     Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class action and product liability litigation.  Plaintiff has no conflict of interest with respect to the interests of the Class he seeks to represent.

10.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all members of the Class is impracticable.  It would be unduly burdensome for courts to litigate individual claims against Intel.

## STATEMENT OF FACTS

**A.     Intel and the X86 Microprocessor Market**

11.    A microprocessor is an integrated circuit that supports the central processing functions of a computer.  Intel manufactures and sells microprocessors.  In particular, Intel sells microprocessors to OEMs, such as International Business Machines ("IBM"), Dell, Inc., Gateway, and Hewlett Packard.   OEMs, in turn, use Intel microprocessors to build computers. OEMs then sell those computers to consumers.

12.    Two types of operating systems dominate the computer world; namely, the so-called "x86" versions of Microsoft Windows and Linux operating systems. In the 1980s, IBM, the company then defining standards for personal computers ("PCs"), chose to build its operating systems using Intel's x86 Microprocessor.

13.    As IBM did not want to turn Intel into a monopoly supplier of x86 Microprocessors, IBM required Intel to contract with another company and license that company to manufacture x86 Microprocessors. That company was AMD.

14.    Intel, however, had other ideas. Starting in 1982, Intel took deliberate actions to prevent AMD from competing with Intel. By its unlawful acts, by or around 1987, it had acquired and maintained the very monopoly that IBM sought to prevent.

15.    In an effort to break Intel's unlawful monopoly, AMD sought to compel Intel to cease its unlawful activities through arbitration. In so doing, the arbitrator made note of Intel's anti-competitive behavior by stating that it was "no fantasy that Intel wanted to blunt AMD's effectiveness in the microprocessor marketplace, to effectively remove AMD as a competitor."

16.    Eventually, after years of litigation, AMD was awarded (through arbitration) millions of dollars in damages and a permanent, non-exclusive, royalty-free license to any Intel intellectual property

17.    Since then, AMD developed its own x86 Microprocessor – the Athlon microprocessor. At its unveiling in 1999, the Athlon microprocessor became the first x86 Microprocessor to run at 1 GHz (gigahertz) speed, which actually outperformed Intel's x86 Microprocessor – the Pentium III microprocessor. Then, in 2003, AMD unveiled its Opteron microprocessor and other innovative microprocessors. At the time, AMD has surpassed Intel at a technology level.

{00005884.DOC ; 2}

18.    Despite the fact that AMD has developed innovative microprocessors and generally sold those microprocessors at lower prices than Intel, Intel continued and continues to dominate the x86 Microprocessor market. Intel's continued dominance was born by its anti-competitive conduct, which stifled AMD's attempts to gain market share and forced direct and indirect purchasers of x86 Microprocessors to pay higher prices and, at the same time, limited product choice and innovation.

**B.    Intel's Unfair or Deceptive Acts or Practices**

19.    During the Class Period, among other things, Intel entered into exclusive or near-exclusive deals with microprocessor purchasers and OEMs (such as Dell, Inc., Sony, Toshiba, NEC, Fujistu, Hitachi, Gateway/eMachines, and Supermicro) to purchase only Intel's microprocessors to the exclusion of AMD's microprocessors.

20.    During the Class Period, among other things, Intel prohibited AMD from the most profitable lines or distribution channels by offering discriminatory discounts, subsidies or payments to microprocessor purchasers and OEMs (such as HP, Gateway, IBM, Fujitsu, Fujitsu-Siemens, and NEC).

21.    During the Class Period, among other things, Intel artificially foreclosed AMD from competing for meaningful market share by implementing a rebate scheme for microprocessor purchasers and OEMs (such as Hewlett Packard).

22.    During the Class Period, among other things, Intel threatened, coerced, and intimidated microprocessor purchasers and OEMs from doing business with AMD (such as Gateway, Compaq Computer, ACER and NEC).

23.    During the Class Period, among other things, Intel interfered with AMD's product launches and promotion, including, without limitation, group boycotts.

24.     During the Class Period, among other things, Intel promoted exclusionary product bundling that provided disincentives to microprocessor purchasers and OEMs when purchasing AMD microprocessors.

25.     During the Class Period, among other things, Intel entered into exclusive or near-exclusive deals with microprocessor distributors to restrict them from carrying or selling AMD products (such as Synnex).

26.     During the Class Period, among other things, Intel offered discounts, bonuses, credits and rebates to microprocessor distributors conditioned upon not doing business with AMD.

27.     During the Class Period, among other things, Intel bribed microprocessor distributors not to do business with AMD.

28.     During the Class Period, among other things, Intel pressured retailers (such as Best Buy, Circuit City, Walmart/Sam's Club, Staples, Office Depot, and Office Max) to keep AMD out of their product plans.

29.     During the Class Period, among other things, Intel entered into exclusive or near-exclusive deals with retailers to sell computers with Intel's microprocessors rather than computers with AMD's microprocessors.

30.     During the Class Period, among other things, Intel excluded AMD from industry standards and promoted industry standards that disadvantaged AMD.

31.     During the Class Period, among other things, Intel leveraged its other product lines to disadvantage AMD in the marketplace.

32.     During the Class Period, among other things, Intel otherwise impeded AMD's competitive growth in the x86 Microprocessor market.

{00005884.DOC ; 2}

## C.    Effects of Intel's Unlawful Conduct

33.    Intel's unlawful conduct suppressed competition in the x86 Microprocessor market, which allowed Intel to overcharge OEMs for Intel's x86 Microprocessors. That overcharge passed through to Plaintiff and the Class members in the form of higher prices for products containing x86 Microprocessors.

34.    In addition, Intel's unlawful conduct:

(a).    deprived or artificially limited Plaintiff and the Class members of the benefits of free and fair market competition among Intel, AMD and others;

(b).    prevented or artificially limited Plaintiff and the Class members from purchasing products containing x86 Microprocessors at lower prices;

(c).    prevented or stifled competition to drive market prices for products containing x86 Microprocessors; and

(d).    prevented or artificially limited consumer choice (Plaintiff's and the Class members') to purchase products containing innovative x86 Microprocessors.

35.    On or about March 8, 2005, the Japanese Government's Fair Trade Commission ("JFTC") recognized some of those competitive harms when it recommended that Intel be sanctioned for its exclusionary misconduct directed at AMD. Intel already has accepted charges brought by the JFTC concerning unlawful conduct with Toshiba, NEC, Fujitsu, and Hitachi.

36.    In or around July, 2005, European regulators raided select foreign operations of Intel based on complaints made by AMD.

**D.    Plaintiff's Demand Letter and Intel's Failure to Make a Reasonable Settlement Offer**

37.    Plaintiff purchased a Dimension 8300 Series (equipped with an Intel Pentium 4 Processor) from Dell, Inc. on or about May 26, 2003 and, upon information and belief, the members of the Class purchased millions of products during the Class Period that contained x86 Microprocessors manufactured or sold by Intel.

38.    On August 23, 2005, Plaintiff sent Intel (c/o its Massachusetts registered agent) a demand letter pursuant to Massachusetts General Laws Chapter 93A, § 9 ("Demand Letter").

39.    On August 26, 2005, Intel (c/o its Massachusetts registered agent) received the Demand Letter.

40.    Intel failed to respond with a reasonable settlement offer within thirty (30) days after receipt of the Demand Letter.

EQUITABLE TOLLING

41.    As a result of Intel's acts or omissions, Plaintiff and the Class members were unaware, and could not reasonably have known or learned, that they were harmed as a direct and proximate result of Intel's conduct.

42.    Intel's unlawful conduct had the effect of unlawfully concealing the causes of action alleged herein until at least June 27, 2005, the day AMD filed its complaint against Intel in this Court. Accordingly, Intel's conduct equitably tolls any limitations period applying to the individual and representative claims asserted herein.

STATEMENT OF CLAIMS

## COUNT I

### (Declaratory and Injunctive Relief
### Sherman Act/Clayton Act)

43.    Plaintiff incorporates by reference the above paragraphs in their entirety as if fully stated herein.

44.    Intel unlawfully, knowingly, and intentionally obtained, maintained, and continues to maintain a monopoly over the x86 Microprocessor Market by and through anti-competitive acts and omissions.

45.    As a direct and proximate result of Intel's unlawful conduct, Plaintiff and members of the Class suffered and continue to suffer harm to their business or property.

46.    Plaintiff and members of the Class have no other adequate remedy at law.

47.    There exists an actual controversy concerning Intel's unlawful conduct under 28 U.S.C § 2201 *et seq.*  Plaintiff and members of the Class are entitled to declaratory relief that Intel's conduct violates the Sherman Act, 15 U.S.C. § 2.  In addition, Plaintiff and members of the Class are entitled to injunctive relief under the Clayton Act, 15 U.S.C. § 26 and/or other applicable law.

## COUNT II

### (Violation of Massachusetts General Laws
### Chapter 93A, Sections 2 and 9)

48.    Plaintiff incorporates by reference the above paragraphs in their entirety as if fully stated herein.

49.    Plaintiff and the Class Members are persons entitled to relief under Massachusetts General Laws Chapter 93A ("Chapter 93A"), Section 9.

50.    Plaintiff and the Class Members purchased products containing x86 Microprocessors and are not entitled to bring an action under Chapter 93A, Section 11.

51.    Defendant was engaged in trade or commerce within the meaning of Chapter 93A.

52.    Defendant's unlawful conduct constitutes unfair or deceptive acts or practices under Chapter 93A, Section 2.

53.    Plaintiff and the Class Members were injured by Defendants' unlawful acts or practices.

54.    Defendant received a demand letter from the Plaintiff, on behalf of Plaintiff and the Class members, in accordance with Chapter 93A, Section 9.

55.    More than thirty (30) days has passed since such demand letter was received and Defendant failed to make a reasonable settlement offer in response thereto.

56.    Defendant's violations of Chapter 93A were knowing or willful, entitling Plaintiff and the Class members to double or treble damages.

## COUNT III

### (Equitable Remedy
### Restitution for Unjust Enrichment)

57.    Plaintiff incorporates by reference the above paragraphs in their entirety as if fully stated herein.

58.    At the time, Intel directly or indirectly manufactured, marketed, sold, or distributed x86 Microprocessors or products containing x86 Microprocessors to Plaintiff and members of the Class.

59.    Plaintiff and members of the Class paid prices for Intel's x86 Microprocessors that were not borne through a competitive market.

60.    Intel has been unjustly enriched through overpayments for its x86 Microprocessors or products containing x86 Microprocessors.

61.    Intel knowingly accepted that unjust enrichment.

62.    It would be inequitable for Intel to retain that unjust enrichment under the circumstances.

**PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief and judgment against Intel as follows:

1.    Certify this action as a class action on behalf of the Class described herein, the named Plaintiff being designated representative of the Class, and the named counsel being designated class counsel;

2.    With respect to Count I, enter a judgment declaring that Intel has committed antitrust violations alleged in the Complaint and permanently enjoin Intel from further engaging in any further unlawful conduct;

3.    With respect to Count II, enter judgment for Plaintiff and for the Class and order Intel to pay forthwith their damages, plus interest, costs, attorneys' fees, multiple damages, and punitive damages as provided by law;

4.      With respect to Count III, enter judgment for Plaintiff and for the Class and order Intel to pay forthwith their damages, plus interest, costs, attorneys' fees, and punitive damages as provided by law, including, without limitation, the disgorgement of Intel's revenues or profits relating to the sale of x86 Microprocessors in Massachusetts; and

5.      Enter such other relief as this Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

BIGGS AND BATTAGLIA

Robert D. Goldberg (I.D. No. 631)
BIGGS AND BATTAGLIA
921 North Orange Street, P.O. Box 1489
Wilmington, Delaware 19899-1489
Tel:  302.655.9677
Fax:  302.655.7924

Dated:  September 27, 2005

OF COUNSEL:
David Pastor (BBO# 391000)
David G. Thomas (BBO# 640854)
GILMAN and PASTOR, LLP
60 State Street, 37th Floor
Boston, MA 02109
Tel:  617.742.9700
Fax:  617.742.9701